UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ALBERT PAUL HUNTER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:09-cv-238 |
| v. | ) | |
| | ) | Judge Mattice |
| CITY OF COPPERHILL, TENNESSEE | ) | |
| and CECIL ARP, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77), filed with a memorandum in support (Doc. 78) (Defs.' MSJ Mem.) on June 17, 2011. Plaintiff filed his Response (Doc. 85) on July 22, 2011, and the parties filed a "Stipulation of Dismissal with Prejudice" on July 25, 2011. Defendants filed their Reply (Doc. 87) on July 29, 2011. Finally, on September 22, 2011, Plaintiff filed a supplemental brief (Doc. 91) (Pl.'s Suppl. Br.) addressing the recently-decided Tennessee Court of Appeals case *Ogg v. Campbell Cnty. Bd. of Educ.*, No. E2009-02147-COA-R3-CV (Sept. 20, 2011), and Defendants filed a responsive brief (Doc. 92) (Defs.' Suppl. Respon.) on September 28, 2011. For the reasons explained below, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense is typically asserted as a motion to dismiss, where the movant challenges the

sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on its holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court explained this restatement by outlining the two "working principles" that underlay *Twombly* and govern a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Instead, a court considering a motion to dismiss should accept as true only well-pleaded factual allegations. *Id.* at 1950. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine, not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment – and the Court to grant summary judgment – "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's

-3-

case." *Id*. at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). *See also*, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are

-4-

adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## II.    FACTUAL BACKGROUND

There are few undisputed facts in this case but, construed in the light most favorable to the Plaintiff, they are as follows:

Plaintiff was hired by the City of Copperhill in 1984 and worked for the City almost continuously until he was terminated on July 31, 2009, save for a nine-month period in 1990 or 1991, variously characterized as being "laid off" or a "leave of absence." (Defs.' MSJ Mem. 4; Pl.'s Respon. 1.) Defendant Cecil Arp was elected Mayor of Copperhill in November of 2008. (Defs.' MSJ Mem. 4.)

During Plaintiff's service in the Vietnam War, his hearing was injured, and by 2003 his condition had deteriorated to the point where he filed for disability benefits from the Veterans Administration, which he has received continuously since then. (Pl.'s Respon. 1; Hunter Dep. 14, 23.) Plaintiff claims he told both Sandi Collins and certain city council members about the disability benefits in 2003. (Hunter Dep. 98-99.) Sandi Collins and Lucas Lowery also testified that they observed the effects of Plaintiff's hearing impairment. (Defs.' MSJ Mem. 6; Pl.'s Respon. 11.) At various times, Defendant Arp has admitted to various levels of knowledge as to Plaintiff's disability, status as disabled, and hearing impairment. (Defs.' MSJ Mem. 7; Pl.'s Respon. 11.)

In April of 2009, Defendant Arp claims to have seen Plaintiff give a citizen a carton of beer while in a city vehicle, which prompted him to meet with Plaintiff and to direct him not to transport alcohol in a city vehicle; Plaintiff agreed he would not do so. (*Id.* at 5.) At

some point thereafter, Defendant Arp claims he was told that Plaintiff had made another beer delivery, first claiming that he was told by Lucas Lowery and then saying he heard from Jerry Gilliam (another City employee) who said he had heard that from Lowery. (Defs.' MSJ Mem. 5; Pl.'s Respon. 4.) Lucas Lowery denies ever speaking with either Defendant Arp or Jerry Gilliam about the matter and says he did not tell anyone about the purported second delivery until he discussed the matter with Sandi Collins after Plaintiff's termination. (Pl.'s Respon. 4-5.) Plaintiff denies he ever delivered beer after being told not to do so. (Defs.' MSJ Mem. 6; Pl.'s Respon. 4.)

On July 23, 2009, Defendant Arp met with Plaintiff in a private meeting to discuss the alleged second beer delivery. (Defs.' MSJ Mem. 5; Pl.'s Respon. 1.) During that meeting, Defendant Arp told Plaintiff to retire, take disability, or be fired. (Pl.'s Respon. 1-2.) Before that meeting, Defendant Arp did not give Plaintiff any written warning and during the meeting, Defendant Arp did not give Plaintiff a chance to correct the behavior. (Pl.'s Respon. 5-6.) Plaintiff did not retire or take disability, and he was fired July 31, 2009 for insubordination and misuse of city equipment. (Defs.' MSJ Mem. 6; Pl.'s Respon. 2.)

Plaintiff was 58 years old when he was terminated, and the individual alleged to be his replacement, Van Baine, was 49 years old. (Defs.' MSJ Mem. 8.) Defendant Arp interviewed Baine for the position before Plaintiff was formally fired. (Doc. 85-6, Ex. F to Pl.'s Respon., August 13, 2009 newspaper article.)[1]

---

[1] While newspaper articles – Arp's quotation is taken from an August 13, 2009 newspaper article – are generally inadmissible hearsay, in this case the article's author Cynthia Maude was deposed thoroughly about researching and writing her articles and the accuracy of their contents. (Doc. 85-7, Ex. G to Pl.'s Respon., Maude Dep.) Defendants not only did not attack the accuracy or credibility of the article or its author in their reply but in fact relied upon the substance of Arp's other statements as reported in that very same article. (Defs.' Reply 7.)

There are disputes over many other significant, material facts, including Plaintiff's status as "disabled," Defendants' knowledge of any disability, and whether Baine replaced Plaintiff or whether the duties were reassigned among existing employees.

Plaintiff filed a charge with the EEOC alleging age and disability discrimination and received a Right to Sue letter. (Doc. 21, Defs.' Answer to Am. Compl. ¶ 58.) Plaintiff filed the instant action on September 9, 2009.

## III. ANALYSIS

In his Amended Complaint, Plaintiff sets forth six causes of action: (1) age discrimination in violation of the Tennessee Human Rights Acts, Tenn. Code Ann. § 4-21-401 ("THRA claim") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA claim"); (2) disability discrimination in violation of the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 ("TDA claim") and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA claim"); (3) violations of the Fair Labor Standards Act ("FLSA claim"); (4) breach of contract, as embodied in Copperhill City Ordinance 4-1117; (5) retaliation in response to asserting his rights pursuant to the FLSA ("FLSA retaliation claim"); and (6) "1983 violations," that is that Defendants, acting under color of state law, violated 42 U.S.C. § 1983 by "depriving Plaintiff of protections granted by the federal statues prohibiting discrimination and unlawful pay practices." (Doc. 19, Am. Compl.)

As previously noted, on July 25, 2011, the parties filed a "Stipulation of Dismissal with Prejudice" in which they represented to the Court that Counts Three (FLSA claim) and Five (FLSA retaliation claim) "have been resolved outside the scope of litigation," and stipulated to the dismissal with prejudice of Counts Three and Five of the Plaintiff's Amended Complaint. (*Id.*) Accordingly, Plaintiff's FLSA and FLSA retaliation claims will be

-7-

**DISMISSED WITH PREJUDICE**.

Finally, Plaintiff did not respond to Defendants' arguments on the unavailability of punitive damages for his claims, so that argument is deemed conceded. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **GRANTED** as to the demand for punitive damages, which demand will be **DISMISSED**.

## A. ADA and ADEA Claim

Before discussing the merits of Plaintiff's ADA and ADEA claims, Defendants argue that Plaintiff has failed to carry his burden[2] of showing that either of those statutes applies to his case because neither the City of Copperhill nor Defendant Arp are "employers" within the meaning of either statute. For the purposes of these claims, neither party contests that the City of Copperhill did not employ more than fourteen (14) employees for each working day in each of twenty (20) or more calendar weeks. (Defs.' MSJ Mem. 11.)

The ADEA defines the term "employer" to mean:

---

[2] In his response, Plaintiff complains that this is the first time Defendants have made this argument in a pleading and argues that because "[t]hey did not allege a lack of statutory coverage in their Answer or as an affirmative defense" – and because, Plaintiff believes, Defendants "have clearly not carried their burden in their principle brief" – the Court should reject this argument and "any effort to carry their burden in a reply brief." (Pl.'s Respon. 12-13 & 13, n.9.)

Construing this statement liberally, Plaintiff appears to be arguing both that Defendants bear the burden of showing that the statutes are inapplicable to them and that he is surprised by this defense. As to the first point, Plaintiff points this Court to no statutes, precedents, or other authorities in support of its argument that Defendants bear the burden of showing the statute is _inapplicable_ rather than that he bears the burden of showing the statutes apply.

As to the second argument, in the face of Defendants' arguments and evidence, Plaintiff neither makes a motion pursuant to Rule 56(d) asking for additional time to conduct discovery on this point, nor contradicts Defendants' evidence as to the number of employees engaged by the City during the relevant time period. Finally, while Defendants' response to the relevant paragraph (¶ I(2)) of the Amended Complaint (Doc. 19) is less than a model of clarity and precision, it seems sufficient to serve as a denial, and Plaintiff does not point to any other evidence, such as a request for admission as to the number of employees that contradicts Defendants' assertions, that would lead the Court to deem the "employer" status as admitted. Instead, Plaintiff makes only legal arguments, which themselves rely on decades-old cases from Florida. Accordingly, the number of employees employed by the City is not in dispute, but merely the applicable legal standard.

> a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: Provided, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

29 U.S.C.A. § 630(b). Despite Plaintiff's contention that "the language of the statute itself makes clear that the Defendants are covered" (Pl.'s Respon. 13), Defendants are correct in noting that the United States Court of Appeals for the Sixth Circuit has clearly held that "the twenty employee statutory minimum applicable to private employers is likewise applicable to government employers." *E.E.O.C. v. Monclova Twp.*, 920 F.2d 360, 361 (6th Cir. 1990). Further, despite Plaintiff's argument that the "definition of 'employer' under the ADEA also applies to elected municipal officials," the Sixth Circuit's caselaw is also clear that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable" under the ADEA. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 & 404-05 (6th Cir. 1997).

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **GRANTED** as to Plaintiff's ADEA claim, and Plaintiff's ADEA claim will be **DISMISSED WITH PREJUDICE** as to both Defendants.

Title I of the ADA, governing employment discrimination, defines "employer" similarly:

> a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years

> following the effective date of this subchapter, an employer
> means a person engaged in an industry affecting commerce
> who has 25 or more employees for each working day in each
> of 20 or more calendar weeks in the current or preceding year,
> and any agent of such person.

42 U.S.C. § 12111(5)(A).

In his response, Plaintiff cites language from the definitions found in both Title I ("Employment") and Title II ("Public Services") of the ADA and cites *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998) in support of its argument that "the non-discrimination prohibitions in Title I of the ADA [ ] apply to states and municipalities . . . regardless of the number of employees." (Pl.'s Respon. 13.)

Plaintiff's citation to and characterization of *Bledsoe* inaccurately conflates Title I and Title II and collapses any distinction between the two, and in merely asking the Court to import language from one title to the other, Plaintiff is unwittingly wading into a larger, highly contested debate that has not yet been resolved in this Circuit.

As recently as March of this year, the United States Court of Appeals for the Sixth Circuit noted that the question of whether Title II applies to employment cases at all is still an open question in this Circuit, before explicitly refraining from reaching that question in the case before it:

> Significantly, whereas Title I specifically addresses
> employment, Title II address "public services," and this court
> has never decided whether Title II applies to employment
> cases. . . . [Because], to the extent Whitfield may have made
> out any claims of Title II violations in her Amended Complaint,
> . . . she has waived them here[,] we need not decide whether
> Title II applies to employment discrimination or whether Title II
> abrogates the states' Eleventh Amendment immunity in the
> employment-discrimination context.

*Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (citing *Dean v. City of Bay City,*

-10-

*Mich.*, 239 F. App'x 107, 112 (6th Cir. 2007) ("[T]his Court declines to reach the novel issue of whether Title II of the ADA applies to employment cases.") In that discussion in *Whitfield*, the Sixth Circuit identified and discussed the split between the federal circuit courts of appeals on the applicability of Title II to employment actions and even cited *Bledsoe* to illustrate that split. *Whitfield*, 639 F.3d at 258 n.1 ("Other circuits are divided on this issue. *Compare Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999) (Title II does not apply to employment), *with* [*Bledsoe*, 133 F.3d at 822] (Title II does apply to employment).").

More importantly for the purposes of the instant motion, in *Whitfield*, the Sixth Circuit found that the plaintiff had waived any Title II claims in part because, while she "allege[d] discrimination under 42 U.S.C. § 12131(A)(2), which provides definitions, and § 12132, which prohibits the denial of public services because of an individual's disability," her complaint "did not tie any particular allegations to those provisions." *Whitfield*, 639 F.3d at 258. Plaintiff's Amended Complaint here does not even approach the level of specificity of the allegations at issue in *Whitfield*. For instance, rather than citing particular language from either Title I or II, in the Amended Complaint, Plaintiff merely alleges that he was terminated "because of his disability" or "because he had a record of a disability or was perceived as having a disability," both "in violation of . . . 42 U.S.C. § 12101." (Am. Compl. ¶¶ 41-42.) Further, his only explicit references to Titles I and II are made for the first time in his response and even then, as previously noted, he fails to make any distinction whatsoever between the two titles and certainly does not appear to be making a claim under both or asking the Court for leave to amend his Complaint again, but rather appears

-11-

merely to be urging the Court to import language from the Titles into each other.

Because the language Plaintiffs used in his Complaint much more clearly seems to mirror claims made pursuant to Title I, because he repeatedly argues that "Title I . . . [applies] to states and municipalities regardless of the number of employees," because his failure to cite an appropriate statutory basis entirely, let alone to cite the provisions of Title II, would not put a party on notice that he was proceeding pursuant to both Titles I and II, and because his first reference to Title II was made in response to Defendants' dispositive motion and even then did not seek to add a claim pursuant to Title II, this Court, as in *Whitfield*, **FINDS** that Plaintiff proceeded only pursuant to Title I.

As Defendants[3] do not qualify as "employers" for the purposes of Title I of the ADA, as to that claim, Plaintiff has failed to state a claim upon which relief can be granted and has failed to show that there is a genuine dispute as to a material fact. Therefore, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **GRANTED** as to Plaintiff's ADA claim, and Plaintiff's ADA claim will be **DISMISSED WITH PREJUDICE** as to both Defendants.

B. "1983 Violations" Claim

In the Amended Complaint, the total detail provided about the nature of the "1983 violations" for which Plaintiff seeks redress is his statement that "[w]hile acting under color of state law, Defendants violated 42 U.S.C. §1983 by depriving Plaintiff of protections granted by the federal statues prohibiting discrimination and unlawful pay practices." This language clearly refers to the previous five counts of the Amended Complaint relating to

---

[3] The holding in *Wathen* as to individual liability was equally applicable to the ADA (and Title VII). *Wathen*, 115 F.3d at 404 n.6.

the ADEA, ADA, and FLSA. Given that the deprivations related to "federal statutes prohibiting . . . unlawful pay practices" – *i.e.* Plaintiff's FLSA claims – are no longer at issue now that his FLSA claims have been settled and given that the deprivations related to "federal statutes prohibiting discrimination" – *i.e.* Plaintiff's ADA and ADEA claims – are no longer at issue since they will be dismissed with prejudice, there are no longer any remaining underlying violations of federal statutory rights upon which a § 1983 claim can be based.

Now, in his Response, Plaintiff now adds for the first time an argument that "[w]hen Mayor Arp terminated Plaintiff for being older and/or disabled without a written warning in contravention of city ordinances, he violated the due process clause of the Fifth and Fourteenth Amendments, the equal protection clause of the Fourteenth Amendment, and the ADA and ADEA, two federal statutes authorized by those amendment." (Pl.'s Respon. 30.) It is not clear whether he is now attempting to add standalone due process and equal protection claims or if they are merely related somehow to the alleged ADEA and ADA violations, but it is certainly clear that he is attempting to add a *Loudermill* procedural due process claim. Plaintiff has not even asked the Court for leave to amend his Complaint yet again to include these new claims, but even if he had, the facts giving rise to these claims (which are, in part, similar to his breach of contract claim) have been known to him since the outset of the litigation. "Once a case has progressed to the summary judgment stage, the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506 (2002)] and the Federal Rules] are inapplicable," and allowing Plaintiff to add a new claim in response to a summary judgment motion "would subject defendants to unfair surprise." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)

(internal citations and quotation marks omitted). *See also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.") (citing *Tucker* and *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) ("Allowing [plaintiff] to present a new theory of her case on appeal that was not alleged below would permit her two bites at the apple, a practice that would be very disruptive of orderly trial procedure.")).

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **GRANTED** as to Plaintiff's "1983 Violations" claim, and his "1983 Violations" claim will be **DISMISSED WITH PREJUDICE** as to both Defendants.

## C.    State Age Discrimination Claim (THRA Claim)

The Tennessee Human Rights Act "prohibits an employer from discriminating in either the hiring or firing of an individual who is at least forty years of age." *Loeffler v. Kjellgren*, 884 S.W.2d 463 (Tenn. Ct. App. 1994) (citing Tenn. Code Ann. §§ 4-21-401, 407). "An employee seeking to recover for unlawful age discrimination bears the ultimate burden of proving that considerations of age not only played a role in but determinatively influenced the employer's decision." *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 511 (Tenn. Ct. App. 2011) Despite the parties' significant briefing on the applicable summary judgment standard and the *McDonnell Douglas* burden shifting regime,[4] that regime only applies in cases based on circumstantial evidence; a plaintiff can

---

[4] The parties devote a substantial amount of briefing (including their supplemental briefs) to addressing the precise summary judgment burden that each party must meet, particularly in light of the impact of the recent Tennessee Supreme Court opinion in *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010). Plaintiff believes that "[t]here are two different summary judgment standards applicable to

establish an age discrimination claim either by inferences drawn from circumstantial evidence or through direct evidence. *Fox v. Baptist Mem'l Hosp. Tipton*, 148 S.W.3d 903 (Tenn. Ct. App. 2002).

In this case, Plaintiff offers, as direct evidence, the fact that he was replaced by a younger worker, that "[h]e was one of the oldest employees on the health insurance plan," that "[h]e was told, among other options, to retire or lose his job," and that "[w]ithin days of his termination Defendant Arp said that Mr. Hunter was too old to find another job—referring to him as obsolete." (Pl.'s Respon. 16.)

Defendants angrily dispute Plaintiff's characterization of the facts and argue that he consistently "asserts incomplete and/or outright misstatements as being 'facts,'" referring specifically to "Plaintiff['s] alleg[ation] that after he was terminated Defendant Arp joked about how the Plaintiff would never find another job." (Defs.' Reply 2.) As is to be expected, both Defendants and Plaintiff somewhat exaggerate what the evidence in question shows,

---

Defendants' Motion," with Federal Rule of Civil Procedure 56 governing the federal claims and "the standards enunciated by the Tennessee Supreme Court in *Gossett v. Tractor Supply* apply as substantive law" to the state claims pursuant to the *Erie* doctrine. (Pl.'s Respon. 11.) Defendants rejoin with post-*Gossett* decisions of federal district courts sitting in Tennessee that they believe support their view.

The parties' arguments largely miss the point and complicate the issue more than is necessary, and because Plaintiff has adduced sufficient evidence as to each of its claims under either standard, the Court declines to rule on their arguments. The Court does note, though, that despite the broadness of its holding (which incorporated all discrimination claims), *Gossett* was decided in the context of a retaliatory discharge claim, which is not at issue here and which implicates different concerns. *Gossett*, 320 S.W.3d at 781 ("No opinion of this Court addressing common law retaliatory discharge, however, has described how an employee must respond to the employer's proffered reason. Nor have we been called on, until now, to demonstrate how the employer's burden of showing a legitimate reason for discharge applies at the summary judgment stage.") Finally, even in rejecting the application of the *McDonnell Douglas* framework at the summary judgment stage, the *Gossett* opinion still acknowledged its usefulness in helping to assess the "sensitive and difficult factual question of whether an employer's decision to discharge an employee was discriminatory or retaliatory." *Id.* at 783 (internal quotation marks omitted). The danger it saw in applying *McDonnell Douglas* – that a court would focus narrowly on the burden shifting without looking at the overall balance of the evidence that may point to discrimination – militates in favor of not strictly applying the framework as a burden-shifting mechanism, but does not bar a court from considering that framework altogether, as long as the court appropriately considers the evidence in the light most favorable to the nonmoving party. *Id.* (citing Timothy M. Tymkovich, *The Problem with Pretext*, 85 Denv. U. L. Rev. 503, 519 (2008)).

-15-

but Defendants are incorrect in asserting that Plaintiff's characterization of the testimony in question here is tantamount to a misstatement. In fact, while Defendants supplement the record to point out the weaknesses in the deponent Matthew Taylor's testimony, the additional deposition testimony simply indicates the level of memory one would expect from a disinterested witness a year later, not that the deponent (Matthew Taylor) reneged on his characterization of the conversation. In total, the excerpted language from Taylor's deposition does support that for which Plaintiff offered it – that a witness heard Defendant Arp, shortly after firing Plaintiff, make derogatory comments about Plaintiff's age, including using the term "obsolete," and its impact on his ability to get another job. (Doc. 85-3, Ex. C to Pl.'s Respon., Excerpts from Taylor Dep.; Doc. 87-4, Extended Excerpts from Taylor Dep., 21:2-3.)

Further, while Defendants state that "[i]t is undisputed that no one replaced the Plaintiff, and certainly there is no evidence contradicting this fact," (Defs.' MSJ Mem. 15), Plaintiff does dispute that strongly and introduces significant evidence showing a genuine dispute of material fact on that point. There is no question that "when an employer assigns the duties of a terminated employee among existing employees, irregardless [*sic*] of the ages of those employees, it is not considered a replacement for purposes of age discrimination analysis." *Williams*, 349 S.W.3d at 512 (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992)). But it is equally true that "an employer cannot avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability." *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 697 (Tenn. Ct. App. 2003) (citing *Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Circ.1990)).

In this case, there is admissible evidence in support of both Plaintiff's and

Defendants' arguments. Defendants introduce evidence – ranging from the Collins Affidavit and Defendant Arp's statement that "Baine was not hired as a city supervisor because the City no longer has that position" – showing that the position no longer exists and that Plaintiff's duties were distributed among other employees. (Doc. 77-1 Collins Aff.; Doc. Doc. 85-6, Ex. F to Pl.'s Respon., Aug. 13, 2009 article.) But Plaintiff introduces significant evidence that Hunter was replaced by Baine, most significantly being the City's response to the EEOC charge in which it stated that "the individual who was retained to replace Mr. Hunter in the job duties that Mr. Hunter was supposed to do before his termination is over the age of forty." (Doc. 85-15, Ex. O to Pl.'s Respon., City's Respon. to EEOC Charge ¶ 7.) Also important is evidence that Ms. Collins told another employee, Lucas Lowery, that Baine was hired to take Plaintiff's place, which statement would not only militate in favor of a finding that Baine did replace Hunter, but also would significantly undermine her credibility and the believability of many of the statements in her affidavit. (Doc. 85-13, Lowery Dep. 20:23-21:25.) Finally, aside from testimony about his label as Plaintiff's "replacement," there is also significant circumstantial evidence, including that Baine was interviewed before Plaintiff was terminated, that he started immediately after Plaintiff was terminated, and that he assumed many of Plaintiff's former duties (the diffuse nature of which make the replacement determination more difficult). *See, e.g.*, (Pl.'s Respon. 17; Aug. 13, 2009 article; Doc. 85-1, Ex. A to Pl.'s Respon., Hunter Dep. 17:22-25.)

Further, even if this were found to be insufficient direct evidence, Plaintiff also makes a sufficient *prima facie* case of age discrimination and, in the face of Defendants' proffered legitimate reason for his discharge, offers sufficient evidence from which a reasonable jury could find that the proffered reason was mere pretext.

-17-

Plaintiff must adduce proof on four elements"[t]o establish a *prima facie* case of age discrimination using the indirect method of proof": "(1) that [Plaintiff] is a member of the protected class of persons forty years of age or older, (2) that his . . . work performance satisfied the employer's reasonable expectations, (3) that he . . . was actually or constructively terminated, and (4) that the termination occurred under circumstances giving rise to an inference of discrimination based on age. *Williams*, 349 S.W.3d at 510 (internal citations omitted). The first three elements seem to be undisputed and both Plaintiff and Defendants focus largely on the fourth factor, which can be (and most often is) shown through "[p]roof that the plaintiff was replaced by a substantially younger employee." *Id.*

As discussed in depth above, not only are there several disputed issues of material fact as to whether Plaintiff was replaced, the parties also dispute how substantial the difference in ages must be – both parties agree it was nine (9) years when Plaintiff was fired and Baine hired – to be "significant." Defendants concede that "[a]ge difference of ten or more years have generally been held to be sufficiently substantial," and attempt to distinguish the Sixth Circuit's opinion in *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003) – that eight years can constitute a significant age difference – by placing significant emphasis (literally) on the fact that "importantly, the Court did not hold that eight years is a significant difference. Id. (emphasis added)." (Defs.' MSJ Mem. 17.) Because the age difference here is already more than one the Sixth Circuit has already held could be significant, the Court will decline Defendants' request (for which they have provided no other authority) that "this Court to find there is no 'significant' age difference between the Plaintiff and Van Baine." (*Id.*)

Finally, given all the other genuine disputes as to material facts, the Court will not examine the pretext prong in significant depth, except to note that there is significant evidence from which a reasonable jury could find that Defendants' asserted reasons for firing Plaintiff were pretextual, including repeated and significant inconsistencies in Defendants' justifications for Plaintiff's termination, significant credibility issues with Defendant Arp's description of how he came to be informed about the alleged transportation of alcohol leading to Plaintiff's termination, substantial evidence that other city employees were not subjected to the same rules applied to Plaintiff, and the manner of Plaintiff's termination – that is, that it deviated substantially from that proscribed in the City ordinances. Plaintiff's Response outlines all of these points in substantial depth, and, having reviewed the record itself in depth, the Court has verified that Plaintiff's response accurately describes those inconsistencies and the materials he cites in support. (Pl.'s Respon. 2-6.)

Accordingly, Plaintiff has demonstrated that there are many disputed issues of material fact, and Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **DENIED** as to Plaintiff's THRA age discrimination claim as to both Defendants.[5]

### D.     State Disability Discrimination Claim (TDA Claim)

The Tennessee Disability Act ("TDA") – codified at Tenn. Code Ann. §§ 8-50-103 & 104 – prohibits:

> discrimination in the hiring, firing and other terms and
> conditions of employment of the state of Tennessee or any . .

---

[5] Defendant Arp's individual liability is discussed below.

-19-

> . political subdivision of the state . . . against any applicant for employment based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn. Code Ann. § 8-50-103(b).

For Plaintiff to be successful in claiming discrimination pursuant to the TDA, he must introduce evidence showing (1) that he was qualified for the position; (2) that he was "disabled"; and (3) that he suffered an adverse employment action because of that disability." *Bennett v. Nissan N.A., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (abrogated by *Gossett* on the (in)applicability of the *McDonnell Douglas* evidentiary framework at the summary judgment stage)). In this case, there is no significant dispute that he was qualified nor that he suffered an adverse employment action, but there are significant disputes over whether he is "disabled" and whether he was fired "based solely upon" that disability, so each of those disputed points will be addressed in turn.

Because "[t]he TDA embodies the rights and definitions of the THRA," *Bennett v. Nissan N.A., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009), a "disability" is defined as: "(i) A physical or mental impairment that substantially limits one (1) or more of such person's major life activities; (ii) A record of having such an impairment; or (iii) Being regarded as having such an impairment." Tenn. Code Ann. § 4-21-102(3)(A). The parties spend an inordinate amount of time on the question of whether Plaintiff's hearing impairment constitutes a "disability" under the first definition – a physical or mental impairment that substantially limits a major life activity – likely due, in large part, to one of

Plaintiff's answers during his deposition[6]. Defendants' counsel asked Plaintiff why he had not requested a special accommodation because "under normal circumstances, I have no problem with it" and because he answered "yes" in response to counsel's question that "[a]ny type of major activity you want to do you're able to do?" *See, e.g.,* (Defs.' MSJ Mem. 19.)

While this is certainly evidence as to the effect on his life of his hearing impairment, the terms implicated – "substantially limits a major life activity" – is a term of art, and his response in that context does not necessarily require the preclusive result Defendants seek. This is especially true in light of the fact that hearing itself has been routinely and repeatedly offered as an example of a "major life activity," such as in the regulations relating to the ADA and the Rehabilitation Act, the statutes from whence the "major life activity" language came. *See, e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998). Further, the testimony of Plaintiff's audiologist as to the nature and effect of his impairment and the testimonies of his wife and his coworkers, Lucas Lowery and Sandi Collins, as to their perceptions of his hearing impairment and its effect on his daily activities and work habit establish at a minimum that the question of whether he is disabled within the meaning of Tenn. Code Ann. § 4-21-102(3)(A)(i) is the subject of disputed material facts. That same evidence – the VA's determination, Collins's jokes, etc. – also supports Plaintiff's position that he is disabled within the meaning of the second definition – having a record of having

---

[6] The confusion could equally be due to the fact that Plaintiff appears to conflate his "health" problems with being disabled. Whenever the question of the nature of the disability arises, Plaintiff points to the audiologist's testimony, the Veterans' Administration's assessment of Plaintiff, and other hearing impairment-related evidence, but when discussing Defendant Arp's knowledge of the same, he tends to refer more to generic "health" problems, particularly health insurance costs. As these generic "health" problems are neither specified in detail nor tied to testimony about their effect on major life activities, the Court only considers Plaintiff's "disability" in connection with his hearing impairment.

such an impairment.

The third definition of having a "disability" – being regarded as having such an impairment – and the second disputed point – whether he was fired based upon that disability – both turn (in the parties' briefing, at any rate) on the question of whether the Defendant Arp (and the City through Defendant Arp, among other avenues) had knowledge of his disability and regarded him as disabled, and on this question, Plaintiff has adduced much less evidence. As already noted, Plaintiff's repeated attempts to tie his termination to his generic" health" problems and the health insurance premium negotiation process are not sufficiently developed in the record and too diffuse at this point to justify such a finding, but Defendant Arp's own statements prove to be sufficient evidence of a link between Plaintiff's termination and his disability for the issue to survive Defendants' Motion for Summary Judgment.[7]

While Defendants argue that "[i]t is undisputed the Plaintiff never told Arp he had a hearing problem, and Arp had no knowledge about any hearing problem until he heard it after litigation had commenced in this matter," Defendant Arp's own deposition testimony belies that assertion. (Defs.' MSJ Mem. 20; Doc. 85-2, Ex. B to Pl.'s Respon., Excerpts from Arp Dep. 51:10-52:16.) Further, while Defendants offer that "[t]he only reference to any disability the Plaintiff can now point to, as it pertains to this issue, is the vague and

---

[7] Defendants argue at length that, because the discrimination at issue must be "solely" because of the disability or age, by pleading and pursuing both, Plaintiff can win on neither. But, Defendants did not respond to Plaintiff's response asserting that he is allowed to, and is, pursuing the claims in the alternative (Pl.'s Respon. 15.) Further, while there is sufficient (and different) evidence to proceed on both the age and disability discrimination claims, ultimately it is the province of the factfinder to determine which motive, if either, was the cause (and to what degree) of Plaintiff's termination. Therefore, as the argument is insufficiently developed, the Court will not consider it further at this stage, but it may be an appropriate subject for a proposed jury instruction and should be pursued in depth at the Rule 51 Charge Conference, if Defendants wish to pursue the argument further.

general nature of Arp's offer to help the Plaintiff fill out disability and/or social security paperwork," that offer is significant, particularly when coupled with the fact that one of the "options" he gave Plaintiff in lieu of being fired was to retire on disability.

The clearest link between Plaintiff's termination and Arp's consideration of his physical impairments, however, is the statement reported in a newspaper article:

> Among Baine's qualifications are that "he has been working in and around and on heavy equipment and has knowledge of repairing heavy equipment. He has maintenance experience and no health problems," said Arp, who felt that Baine "would fit right in with the city's needs."

(Ex. F to Pl.'s Respon., Aug. 13, 2009 Article.) As previously noted, Defendants did not attack the accuracy or credibility of the article or its author in their reply, and in fact relied upon the substance of Arp's other statements reported in that very same article. (Defs.' Reply 7.) Although Defendants argue that the assertion that Baine did not have any disabilities is unsubstantiated, the relevant part of the article is not Baine's health, but rather that Arp's statements seem to indicate that not only was having "no health problems" a qualification of the job, but that that qualification was as important as having maintenance experience.

Given the conflicting evidence on Arp's knowledge of Plaintiff's disability and given the evidence that he apparently assigned substantial value to the health of Plaintiff's alleged replacement, the Court finds that a reasonable jury could find Plaintiff's disability to be the motivation behind his termination. Therefore, Plaintiff has made a sufficient *prima facie* case on his TDA claim and, because the evidence relevant to Defendants' proffered justification and its potentially pretextual nature is identical to that already analyzed in discussing the THRA age discrimination claim, Plaintiff has shown enough material facts

-23-

are in dispute to survive Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77).

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **DENIED** as to Plaintiff's TDA claim as to both Defendants.

### E.    Breach of Contract Claim

Defendants' arguments on Plaintiff's breach of contract claim are brief and do not address the claim in any significant depth, merely asserting that Plaintiff was an at-will employee, that the City Ordinance in question (4-217) did not create a contract, and that another ordinance (4-202) made clear that nothing in the ordinances could be construed as creating a property right. (Defs.' MSJ Mem. 30-33.)

Plaintiff responds that several handbook provisions guarantee that termination will not be based on age or disability discrimination and that an employee will be entitled to certain procedures (in particular, a written warning) before being terminated. (Pl.'s Respon. 32-33.) Plaintiff also pointed out that the provision highlighted by Defendants (4-217), if read further, specifies that:

> This subsection addressing procedures to be followed for disciplinary action only applies to those individuals *currently employed by the City of Copperhill*. All employees hired after the date this ordinance is passed are at will employees and may be dismissed without cause, and without following the procedure stated hereafter.

(*Id.* at 33.) Plaintiff points out that when the 2002 ordinances were passed, he was within the group of "those individuals currently employed," and thus he retained a right to the City's disciplinary procedures. (*Id.*)

Defendants' only reply to Plaintiff's arguments is the two-sentence assertion that

-24-

"[t]hese Defendants rely upon their Motion for Summary Judgment and brief filed in support as it relates to the breach of contract claims asserted by the Plaintiff. Tennessee law is clear that the Plaintiff's breach of contract claims should fail as a matter of law." (Defs.' Reply 23.)

While Plaintiff's arguments in opposition were only marginally more detailed than Defendants' arguments in the main brief, Defendants' total failure to respond to those points means, at a minimum that Defendants have failed to carry their burden on their motion for summary judgment and, at the outside, leaves the Court with the impression that Plaintiff's arguments about his pre-2002 status and contractual entitlements are undisputed. Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **DENIED** as to Plaintiff's breach of contract claim.

### F.     Defendant Arp's Individual Liability

Defendants' arguments on Arp's liability as an "aider and abettor" are cursory at best and rely upon a finding that the alleged discrimination did not occur and that "individual liability under the THRA is . . . frowned upon." (Defs.' MSJ Mem. 29-30.) It is unclear from the briefing if Defendants' arguments are made just in relation to Plaintiff's state age discrimination claims or if, because the TDA "embodies the rights and definitions" of the THRA, it applies to both of Plaintiff's state discrimination claim. Plaintiff failed to respond specifically on this point, although many of his arguments in the qualified immunity analysis are generic enough to be somewhat relevant.

Regardless, the passive voice of the relevant language of the TDA – "[t]here shall be no discrimination in the hiring, firing and other terms and conditions of employment" –

differ substantially enough from the relevant language of the statutes at issue in the cases cited by Defendants that it is not clear that this Court should adopt wholesale the holdings of those cases that there is no individual liability in any THRA claim. This is particularly true where those cases' holdings are far from universally accepted. *See, e.g., Johnson v. Fayette Cnty., Tenn.*, 271 F. Supp. 2d 1068, 1071 (W.D. Tenn. 2003) (disagreeing with the holding in *Frizzell v. Southwest Motor Freight, Inc.*, 906 F. Supp. 441 (E.D. Tenn. 1995)).

Accordingly, Defendants' argument is insufficiently developed as to Defendant Arp's individual liability on the state claims, and thus their Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) will be **DENIED** as to their request to dismiss Defendant Arp's individual liability.[8]

## IV. CONCLUSION

Accordingly, and for the reasons stated above, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 77) is hereby **GRANTED IN PART** as to Plaintiff's ADA, ADEA, "1983 Violations" claims and his demand for punitive damages, all of which are hereby **DISMISSED WITH PREJUDICE** as to both defendants, and **DENIED IN PART** as to Plaintiff's THRA age discrimination claim, TDA disability discrimination claim, and breach of contract claim, all of which shall proceed to trial.

**SO ORDERED** this 29th day of November, 2011.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[8] As with Defendants' arguments on the alternative pleading of the age and disability discrimination cases, this subject may be appropriate for a jury instruction and should be raised by Defendants at the Rule 51 Charge Conference if they wish to pursue it further.