IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ALBERT PAUL HUNTER,

      Plaintiff,

v.

      No. 1:09-cv-238
      Mattice/ Carter

CITY OF COPPERHILL, TENNESSEE
and CECIL ARP,

      Defendants.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff Albert Hunter and Defendant Cecil Arp, Mayor of the City of Copperhill, Tennessee, each move for attorney's fees in this employment discrimination action which went to trial on January 1, 2012. [Doc. 150 and Doc. 148, respectively]. Plaintiff, who prevailed on his age discrimination claim brought against the City of Copperhill (the City) under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 *et seq.*, moves for attorney's fees in the amount of $214,717.75 and for costs in the amount of $5,559.74 pursuant to Tenn. Code Ann. § 4-21-311(b). Plaintiff was not successful on his age and disability discrimination claims brought under state and federal law against Mayor Arp, and Arp moves for the award of attorney's fees and costs pursuant to 42 U.S.C. § 12205 and 42 U.S.C. § 1988 in the amount of $106,701.60. For the reasons stated herein, it is RECOMMENDED that Plaintiff Hunter's motion for attorney's fees and costs be GRANTED in the amount of $198,556.00 and that Defendant Arp's motion for attorney's fees and costs be DENIED.

1

## II. Facts

In September of 2009, the Plaintiff, who had been employed as the City Supervisor for the City, initiated this action alleging breach of contract and wrongful termination pursuant to various State and Federal statutes as a result of his discharge from employment with the City. Plaintiff brought his action against the City and against its mayor, Cecil Arp, in his individual capacity. Plaintiff's claims against the City and Arp were based on Mayor Arp's conduct in firing him as the City Supervisor.

In his Amended Complaint, Plaintiff set forth six causes of action: (1) age discrimination in violation of the Tennessee Human Rights Acts (THRA), Tenn. Code Ann. § 4-21- 401, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621; (2) disability discrimination in violation of the Tennessee Disability Act (TDA), Tenn. Code Ann. § 8-50-103, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101; (3) violations of the Fair Labor Standards Act (FLSA); (4) breach of contract, as embodied in Copperhill City Ordinance 4-1117; (5) retaliation in response to asserting his rights pursuant to the FLSA; and (6) "1983 violations," that is that Defendants, acting under color of state law, violated 42 U.S.C. § 1983 by "depriving Plaintiff of protections granted by the federal statues prohibiting discrimination and unlawful pay practices." (Doc. 19, Am. Compl.) On July 25, 2011, the parties filed a "Stipulation of Dismissal with Prejudice" in which they represented to the Court that the FLSA claims "have been resolved outside the scope of litigation," and stipulated to their dismissal. Accordingly, Plaintiff's FLSA claims were dismissed with prejudice.

Subsequently, Defendants filed a motion for summary judgment which the Court granted as to the Plaintiff's ADEA and ADA claims on the ground that neither the City nor Arp qualified as an "employer" under either law. Plaintiff's claim brought under 42 U.S.C. § 1983 were based

2

on his claims brought under the ADA, the ADEA, and the FLSA onto Section 1983, but since none of those claims were viable, the Court dismissed the Plaintiff's Section 1983 claim.[1] The Court denied the Defendants' motion for summary judgment on Plaintiff's claims of age discrimination and disability discrimination brought under the THRA and the TDA, respectively, against both the City and against Arp.

Trial on Plaintiff's age and disability claims and breach of contract claim, all brought under state law against both Defendants, commenced on January 24, 2013. The Court directed a verdict in favor of both Defendants on Plaintiff's breach of contract claim on the basis that the City's ordinance, upon which the breach of contract claim was based, did not constitute an employment contract. The Court also directed a verdict for Arp on Plaintiff's state law discrimination claims on the ground that Arp could not be held individually liable for his conduct as an "aider and abettor" under the TDA or the THRA since he was the alleged perpetrator of the alleged age and disability discrimination.[2] Consequently, no claims remained against Arp to send to the jury. However, the jury, in question one of the verdict form, found the City had discriminated against the Plaintiff because of his age in violation of the THRA. The verdict form then directed the jury to skip the question about disability discrimination and go straight to damages. The jury awarded Plaintiff $350,000 in damages for age discrimination in violation of

---

[1] To make a claim under 42 U.S.C. 1983, the plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley*, 167 F.3d 1014, 1017 (6th Cir. 1999); *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir. 1997).

[2] It is ironic that the City was found liable for age discrimination on the basis of Mayor Arp's conduct, but, because Mayor Arp was the *primary* perpetrator of the discrimination as opposed to a mere "aider and abettor" in the discrimination, Mayor Arp could not, under Tennessee law, be held individually liable for his conduct.

3

state law. It did not address the question of whether the City had discriminated against the Plaintiff because of a disability in violation of the TDA.

### III. Analysis

*A. Plaintiff's Motion for Attorney's Fees and Costs*

Plaintiff seeks from the City his attorney's fees and costs incurred in the amount of $220,277.49 to prosecute his claim under the THRA for age discrimination. The City objects to the fees requested by the Plaintiff on several grounds: 1) Plaintiff's lawyers' rates are too high, 2) the total number of hours requested are redundant, excessive, and unnecessary or are unsupported by the Plaintiff's motion and affidavits, and 3) Plaintiff's request should be cut 33% to account for the fact that Plaintiff did not prevail on all his claims. The City asserts Plaintiff should be awarded a fee of $85,261.02 and costs in the amount of $3,751.83.

Generally, federal courts in the United States follow the American Rule whereby each party bears his or her own attorney's fees no matter what the outcome of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 2 (1983); *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 793 (6th Cir. 1988). An exception arises where a prevailing party has a statutory right to attorney's fees. *See Hensley*, 461 U.S. at 433 n. 2 (discussing statutory exceptions to the American Rule). It is undisputed that the Plaintiff was the prevailing party in his age discrimination claim brought under the THRA against the City. The THRA allows for reasonable attorney's fees and costs to be awarded to a prevailing party. *See* Tenn. Code Ann. §§ 4-21-306(a)(7) and 311. The parties are in agreement that the standard applied to a Plaintiff's attorney's fee application under Tenn. Code Ann. §§ 4-21-306(a)(7) and 311 is the same as that applied to an attorney's fee application brought by a prevailing Plaintiff under federal anti-discrimination laws.

4

A party seeking attorney's fees under a fee shifting statute bears the burden to show he or she is entitled to the amount requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). The fees requested should be documented, and, where they are not, the district court may reduce the award accordingly. *Id*. The award of attorney's fees is left to the district court's exercise of discretion within the appropriate parameters which are discussed below. *See Hensley*, 461 U.S. at 437; *Reed*, 179 F.3d at 469 n.2; *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997), *overruled in part on other grounds by Pollard v. E. I. DuPont Nemours & Co.*, 532 U.S. 843 (2000).

Attorney's fees for successful litigants under federal fee shifting statutes are commonly calculated using the "lodestar" method of multiplying the number of hours reasonably expended by a reasonable hourly rate. *Web v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 242 (1985); *Hensley,* 461 U.S. at 433; *Adcock-Ladd v. Secretary of the Treasurer*, 227 F.3d 343, 349 (6th Cir. 2000); *Reed*, 179 F.3d at 471. The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case by case basis. *Hensley*, 461 U.S. at 429. "The question is not whether a party prevailed on a particular motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed." *Michael v. Windsor Gardens, LLC*, 2005 WL 1320189 *11 (E.D. Tenn. June 2, 2005) (unpublished) (quoting *Anglo-Danish Fibre Indus. Ltd. v. Columbian Rope Co.*, 2003 WL 223082 *3 (W.D. Tenn. Jan. 28, 2003) (unpublished)).

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd*, 227 F.3d at 350; Reed, 179 F.3d at 473. The "relevant community" for fee purposes is the

5

legal community within the court's territorial jurisdiction. *Adcock-Ladd*, 227 F.3d at 350; *Hudson*, 130 F.3d at 1208. The "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the relevant community. *Id*. That rate may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required. *Coulter v. Tennessee,* 805 F.2d 146, 148 (6th Cir. 1986); *see also Adcock-Ladd*, 227 F.3d at 349 ("The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.") (citing *Reed*, 179 F.3d at 471). "Such fees are different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Coulter*, 805 F.2d at 149; *accord*, 179 F. 3d at 472; *Hudson*,130 F.3d at 1208.

While the lodestar method is the appropriate starting place for determining attorney's fees, the inquiry does not end there. *Hensley,* 461 U.S. at 432. Other considerations may lead the district court to adjust the fee. *Id*. at 430-434. Factors which a court may consider to adjust the fee upward or downward are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3, *accord Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005).

"'[T]he most critical factor' in determining the reasonableness of a fee award is 'the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley,* 461 U.S. at 436); *Cramblit v. Fiske*, 33 F.3d 633, 635 (6th Cir. 1994). For example, where the purpose of the litigation is to recover damages, then the district court must consider the amount and nature of damages awarded when determining attorney's fees. *Farrar*, 506 U.S. at 115; *see also Adcock-Ladd*, 227 F.3d at 349; *Cramblit*, 33 F.3d at 635. Where a party achieves only partial success, the district court must consider whether the party achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434. In this case, Plaintiff was not successful on all his claims, and the court may award attorney's fees and costs only for those fees and costs incurred in pursuing the claims on which he did prevail, *i.e.*, the claim for age discrimination brought under the THRA. However, when fees and costs incurred are applicable to the claim on which the Plaintiff *did* prevail as well as to the claim on which the Plaintiff did *not* prevail, the Plaintiff is generally entitled to those fees. *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006). The Sixth Circuit in *Jordan* stated,

> … the seminal opinion in *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) explained that when claims "involve a common core of facts" or are "based on related legal theories," the district court's rejection of certain grounds is not a sufficient reason for reducing a fee. There is no precise test for determining whether claims are related (see *id.* at 437 n. 12, 103 S.Ct. 1933), although our sister circuits have focused on "whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised" (see, e.g., *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 903 (9th Cir.1995) (internal quotations omitted) and cases cited there).

*Id., accord, Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996) ("When claims are based on a common core of facts or are based on related legal theories, for the purpose

7

of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.") As further explained by the *Jordan* court,

> That is so because litigation is not an "exact science": Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative (see *Goos v. Nat'l Ass'n of Realtors,* 68 F.3d 1380, 1386 (D.C.Cir.1995)). Fee awards comport with that reality by giving full credit to a meaningfully successful Plaintiff, rather than making a mechanical per-losing-claim deduction from an attorney's fee award (*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933).

*Jordan*, 464 F.3d at 604. Furthermore, "awarding fees for services connected with related claims, though the claims prove unsuccessful, 'supports the underlying purpose of … encouraging attorneys to take civil rights actions in view of the ethical duty of zealous representation.'" *Id.* at 604 n.25 (citing *Goos v. National Ass'n of Realtors*, 68 F.3d 1380, 1386 (C.A. D.C. 1995)). Consequently, to the extent Plaintiff has incurred fees for work applicable to both his state age discrimination claim against the City and to his other claims upon which he did not prevail, the undersigned will recommend reasonable attorney's fees be awarded. On the other hand, fees attributable solely to those claims upon which Plaintiff did not prevail will not be awarded. Further, hours which are "excessive, redundant, or otherwise unnecessary," are not reasonably expended and fees for those hours should not be awarded. *Hensley*, 461 U.S. at 434, *accord Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006).

### 1. Attorneys' Hourly Rates

Plaintiff seeks an hourly rate of $395.00 for Harry Burnette and $295 for Donna Mikel. The City argues these rate are more than is necessary to encourage competent counsel to take a case such as the instant one and suggest an hourly rate of $225 for Mr. Burnette and $200 for Ms. Mikel is appropriate. Both sides submit competing affidavits from other attorneys with experience practicing employment discrimination law in this District. The undersigned is

8

familiar with the work of both Mr. Burnett and Ms. Mikel and finds them to be highly skilled in the practice of employment law, an area which requires specialized knowledge in order to be successful. Plaintiff has submitted the affidavits of three very competent, well respected attorneys with extensive experience in employment law in Chattanooga to support Plaintiff's assertion that the hourly rates requested are reasonable. (*See* affidavits of Hal F.S. Clements - Doc. 152; W. Ferber Tracy – Doc. 153; and Paul W. Campbell, III – Doc. 154). These attorneys have regularly represented clients in employment law cases and are familiar with the abilities of Plaintiff's counsel in this case. Their affidavits indicate the hourly rates requested by Plaintiff's counsel are well within the rates generally obtained by counsel in Chattanooga of equal skill and competency. Of course, the attorneys' affidavits submitted by the City argue their suggested rates of $225 and $200 are appropriate. The undersigned does not think such rates would have been sufficient to encourage lawyers of Mr. Burnette's and Ms. Mikel's caliber to take this case on a contingency basis as they did. The case took three years to prosecute and required significant planning and discovery with no promise of any remuneration for their work. There were numerous legal issues and the case was vigorously defended. Finally the undersigned also observes that six and one half years ago, in *Trimble v. Southern Champion Tray*, Docket No. 03-0793 (December 4, 2007), and four years ago in *Shelton v. State of* Tennessee, Docket No. 05-1005 (July 23, 2009), the Chancery Court of Hamilton County, Tennessee approved in an employment discrimination case an hourly rate of $350.00 for senior partners, $250.00 for junior partners and $175.00 for associates. [3] The undersigned is also familiar with attorney Frank

---

[3] In *Waldo v. Consumers Energy Co.*, __F.3d__, 2013 WL 4038747 at *11 (6th Cir. Mar. 7, 2013) the district court in the Western District of Michigan, Grand Rapids, awarded plaintiff's attorney $400 per hour and this amount was affirmed by the Sixth Circuit. While this case is not evidence of the prevailing market rates in Chattanooga, it is certainly evidence that there is no specific ceiling on rates to be awarded a prevailing plaintiff's counsel.

9

Pinchak who has practiced law in Chattanooga for over thirty years. He is also a highly skilled, competent lawyer practicing in employment law and is a senior partner at the law firm of Burnett, Dobson, and Pinchak. Attorney Dan Zytnick is also known to the undersigned because he was an elbow law clerk for two years for United States District Court Judge Curtis Collier. District Court law clerks are law school graduates who pass the bar during their first year with the court. Mr. Zytnick is also a very capable lawyer. However, given his lack of experience, the undersigned will assess his hourly rate as the same hourly rate, *i.e.*, $120, applied to associate attorney Bill Payne.[4] Based on all the foregoing, the undersigned concludes the rates requested are appropriate, except that attorney Zytnick shall be awarded the rate of $120 per hour instead of $175.00.

### 2. *The Number of Hours Billed*

The City contends the number of hours billed was redundant and excessive. The City points especially to the work performed by Mr. Pinchak and Mr. Payne prior to trial and Mr. Payne's work during trial. Plaintiff counters that most of the work performed by Mr. Pinchak and Mr. Payne prior to trial was completed while Ms. Mikel was on maternity leave and they were covering for her. The undersigned finds this explanation reasonable.

Plaintiff's attorneys Burnett, Mikel and Payne as well as paralegal Tammie Dickson were all present during the trial of this case. The City argues it was unnecessary for the Plaintiff to have three attorneys and a paralegal present during trial. Plaintiff counters that the Defendant engaged in numerous tactics which required everyone's presence, such as refusing to stipulate to the admissibility of documents and requiring the medical record to be read *in toto* into the record. Plaintiff also states that Mr. Payne did most of the work researching and briefing Plaintiff's

---

[4] Plaintiff has agreed to relinquish his claim to the .2 hours of work performed by Steve Dobson.

10

response to the City's motion for a directed verdict. He also researched the issue of proving an exhibit through judicial notice and how that doctrine applied to municipal ordinances, work Plaintiff asserts was required by the City's refusal to stipulate to the admissibility of its own ordinance. According to Plaintiff, Ms. Dickson's presence was necessary to coordinate and organize 45 exhibits, several tape recordings, and the witnesses. Given the particularly vigorous manner in which the City defended this case, the undersigned concludes Mr. Payne's work in this case, including at trial, was not excessive or redundant.

### *3. Plaintiff Not Entitled to Fees for Claims on Which he did not Succeed*

The City is correct that the Plaintiff is not entitled to fees on claims on which he did not succeed – except where work performed on those claims would also be applicable to the claim on which he did succeed. The gravamen of this complaint was employment discrimination based on the conduct of Mayor Arp and Plaintiff was very successful in obtaining a $350,000 award against the City for age discrimination in violation of the THRA. The same set of core facts was involved in the state and federal cases brought against Mayor Arp and in the state and federal cases brought against the City. However, the undersigned acknowledges there were a few very narrow issues, not requiring significant work, which applied *solely* to the state and federal discrimination claims against Mayor Arp. For example, whether Arp was an employer as defined by the ADA and the ADEA and whether Arp was an aider and abettor under the THRA and the TDA would have required some legal research unique to those claims alone. Plaintiff has not attempted to parse out those fees incurred solely for said issues. Consequently, the undersigned concludes a reduction of ten percent of the fees requested is appropriate. The undersigned will not recommend reducing the costs by ten percent. The costs appear to be

11

primarily court reporter fees, witness fees, parking, and the filing fee – all which would have been incurred in order to prosecute the state age discrimination claim against the City.

### *4. Calculation of Attorney's Fees and Costs*

The original amount of attorney's fees Plaintiff requested was $214,717.75. By eliminating Mr. Dobson's requested fee of $79 and applying an hourly rate of $120 to Mr. Zytnick's time, the total amount of fees is $214,440.25. When reducing that amount by ten percent, the total amount of attorney's fees due is $192,996.26. When considering the degree of success the Plaintiff had in this case, *i.e.,* an award of $350,000; the length of time necessary to prosecute the case, the complexity of the issues involved, the labor intensive nature of the case, the skill and reputation of the attorneys, and the contingency nature of the fee arrangement, the undersigned concludes a fee award of $192,996.26 is well justified. Costs remain $5,559.74.

### *B. Defendant's Motion for Attorney's Fees and Costs*

Defendant seeks attorney's fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205. Under Section 12205, the court, "in its discretion, may allow the prevailing party … a reasonable attorney's fee" in claims brought under the ADA. Under Section 1988, the court, "in its discretion, may allow the prevailing party… a reasonable attorney's fee" to the prevailing party in claims brought under 42 U.S.C. § 1983. *Hensley*, 461 U.S. at 433 n. 2; *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 793 (6th Cir. 1988). Defendant Arp asserts that because the Plaintiff's claims brought against him under the ADA, the ADEA, and Section 1983 were dismissed, he is entitled to attorney's fees exceeding $100,000.

The same standard is used for both Section 1988 and Section 12205 when evaluating a motion for attorney's fees and costs. *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. of Health*, 532 U.S. 598, 624 n. 1 (2001) (*superseded by statute on other grounds*)

12

(attorney's fee provision under the ADA, 42 U.S.C. § 12205, is modeled after Section 1988). The test for awarding attorney's fees to a defendant as a prevailing party under 42 U.S.C. § 1988 is more stringent that the test for awarding fees to a plaintiff. A defendant is entitled to fees when the plaintiff's action was frivolous, unreasonable, or lacking foundation, even though it was not brought in subjective bad faith. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)); *Lowery v. Jefferson County Bd of Education. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009); *Tarter v. Raybuck*, 742 F.2d 977, 985 (6th Cir. 1984). "The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself sufficient justification for the assessment of fees." *Hughes,* 449 U.S. at 14. The Supreme Court in *Christiansburg Garment Co.*, 434 U.S. at 421-422, cautioned against awarding fees too freely to prevailing defendants in civil rights cases:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a Plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective Plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predicable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*See also, Tarter,* 742 F.2d at 986 (quoting *Christianburg* in the context of a suit brought under 42 U.S.C. §§ 1983 and 1988); *Jones v. Continental Corp.,* 789 F.2d 1225, 1232 (6th Cir. 1986) ("An award of attorney's fees against a losing Plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct"); *accord*, *Lowery*, 586 F.3d at 437.

13

Plaintiff's ADA (disability) claim and this ADEA (age) claim against Arp were dismissed because Arp was not covered under either the ADA or the ADEA as Plaintiff's employer. Plaintiff's Section 1988 claim was dismissed because he had settled his FLSA claims and the ADA and ADEA claims had been dismissed. Since the parties settled their FLSA claim, Arp cannot be said to be the prevailing party on that claim. Arp was the prevailing party on the ADA (disability) claim and the ADEA (age) claim brought against him. These claims were also brought against the City and the City prevailed on the ground that it did not have enough employees to qualify as an employer under the ADA or ADEA. However, as previously indicated, Plaintiff also brought against the City a disability discrimination claim under the TDA and an age discrimination claim under the THRA. The City was found liable to the Plaintiff in the amount of $350,000 on Plaintiff's THRA age discrimination claim based on Arp's conduct while Mayor of the City. Since the Plaintiff's claims for age and disability discrimination were based on the same conduct of Mayor Arp, once the jury found in favor of the Plaintiff on the state age claim, it did not address the Plaintiff's state disability claim because any award for the disability claim would have been duplicative of the award for the age claim. The vast majority of work that Defendants' attorneys completed to defend Mayor Arp on Plaintiff's ADA and ADEA claims would have been incurred to defend these same claims against the City brought under the TDA and the THRA, even if Arp had not been named a defendant in the case. In contrast, whether Arp was an employer under the ADA and the ADEA was an issue unique to the federal age and disability claims brought against Arp. Nevertheless, Arp makes no attempt in his fee application to identify that work completed solely on the employer issue for the ADA and ADEA claims asserted against him.

The City and Arp are represented by the same attorneys in this case. Further, it is my understanding that the fees for both the City and Mayor Arp are being paid from the same fund.[5] Presumably the City will be responsible for its fees, most of which will be for work overlapping Arp's defense. It is unreasonable to award one defendant fees for work that will be paid by another defendant.[6]

Finally, the undersigned finds, especially given Mayor Arp's own culpability in this action, that an award of fees to Arp is not warranted, and Plaintiff's conduct in filing and maintaining his ADA and ADEA claims does not rise to the level of a truly egregious case of misconduct that merits awarding attorney's fees to a defendant pursuant to Section 1988 or Section 12205. Consequently, the undersigned RECOMMENDS Defendant Arp's motion for attorney's fees (Doc. 148) be DENIED.

---

[5] As previously stated, the City and Arp are represented by the same attorneys. According to Plaintiff, Defendants' attorneys are being paid through the "TML." (*See* Plaintiff's Response, Page ID # 1905, n.1). Defendants do not dispute this assertion.

[6] The undersigned assumes that Defendants' counsel does not intend to double bill their clients.

15

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[7] that Plaintiff's motion for attorney's fees and costs (Doc. 150) be GRANTED and that Plaintiff be AWARDED $192,996.26 in attorney's fees and $5,559.74 in costs. It is further RECOMMENDED that Defendant Arp's motion for attorney's fees (Doc. 148) be DENIED.

S/
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).